**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**RICHARD CHESEBRO,**

                                        **Plaintiff,**

        **vs.**                                                    **1:18-CV-01294**
                                                                   **(MAD/CFH)**

**TOWN OF GUILDERLAND,**

                                        **Defendant.**

_____

**APPEARANCES:**                              **OF COUNSEL:**

**RICHARD CHESEBRO**
7 Wilber Avenue, #3
Schenectady, New York 12304
Plaintiff *pro se*

**SOLOMON & SOLOMON, P.C.**                   **NORINA A. MELITA, ESQ.**
5 Columbia Circle
Albany, New York 12212
Attorneys for Defendant
Town of Guilderland


**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        On November 5, 2018, *pro se* plaintiff Richard Chesebro ("Plaintiff") commenced this

action against Defendant Town of Guilderland ("Defendant") by alleging that Defendant had

discriminated against him in violation of the Americans with Disabilities Act ("ADA") and the

Age Discrimination in Employment Act ("ADEA"). *See* Dkt. No. 1 at 1. Specifically, Plaintiff

alleges that Defendant discriminated against him on the basis of Plaintiff's "age [and] injurys

[sic]" by refusing to assign Plaintiff to "light duty" after he returned from workers' compensation,

ultimately leading to his termination. *Id.* at 3-5. Plaintiff also alleges that Defendant terminated

him in retaliation for cooperating with the Equal Employment Opportunity Commission ("EEOC") and with the New York Public Employee Safety and Health Bureau ("PESH"). *See id.* at 4. Plaintiff seeks "[j]udgment against the defendents [sic][,] compenatory [sic], statutory and punitive damages, back pay and any further relief." *Id.* at 9. Plaintiff also seeks "[h]ealth insurance[,] [a]ll my [i]ncome for [four] years[,] and [damages for] pain and suffering[.]" *Id.* at 13. Because Defendant failed to timely answer Plaintiff's complaint, Plaintiff applied for entry of default, which the Clerk of the Court entered on March 8, 2019. *See* Dkt. No. 14. On April 30, 2019, Plaintiff moved for entry of default judgment. *See* Dkt. No. 16. On May 17, 2019, Defendant filed a motion to vacate the entry of default and moved to dismiss the complaint. *See* Dkt. No. 17.

Currently before the Court are Defendant's motions to vacate the entry of default an to dismiss the complaint, and Plaintiff's motion for default judgment.

## II. BACKGROUND

On February 22, 2018, Defendant terminated Plaintiff from his employment with Defendant's Water and Wastewater Department. *See* Dkt. No. 17-1 at ¶ 29. Plaintiff's complaint, construed liberally, presents five claims related to his termination. *See* Dkt. No. 1 at 3-6. First, Plaintiff alleges that Defendant violated the ADEA by terminating Plaintiff because of Plaintiff's age. *See id.* Second, Plaintiff alleges that Defendant violated the ADA by terminating Plaintiff because of his neck injury. *See id.* at 3, 5. Third, Plaintiff also alleges that Defendant violated the ADA by failing to provide a reasonable accommodation for his neck injury. *See id.* at 3. Fourth, Plaintiff further alleges that Defendant's failure to accommodate his neck injury constituted disparate treatment and discrimination under the ADA. *See id.* Finally, Plaintiff alleges that Defendant violated the ADA by terminating him in retaliation for his cooperation with the EEOC

and with PESH. *See id.* at 4. Defendant, however, claims that it terminated Plaintiff because he endangered coworkers when he left his post as a traffic flagger "during a project on a busy Town road" and also because he had "an extensive history of disciplinary action." Dkt. No. 17-4 at ¶¶ 11, 16.

On February 28, 2018, six days after Plaintiff's termination, Plaintiff filed a complaint for both his ADEA and ADA claims with the EEOC. *See* Dkt. No. 1 at 4. On March 15, 2018, the EEOC dismissed Plaintiff's ADEA claim and "forwarded [the ADA claim] to the [United States] Department of Justice (DOJ) for review to determine whether the DOJ will bring suit in Federal District Court against [Defendant] regarding [Plaintiff's] ADA allegations." Dkt. No. 17-2 at 19-20. The EEOC's dismissal letter included a "Notice of Suit Rights" section informing Plaintiff that "[t]his will be the only notice of dismissal and of your right to sue that [the EEOC] will send you. . . . Your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice[,] or your right to sue based on this charge will be lost." *Id.* at 20. On August 17, 2018, the DOJ dismissed Plaintiff's ADA claims and informed Plaintiff that "conciliation on [Plaintiff's ADA] case was unsuccessful by the EEOC." Dkt. No. 20 at 17. This letter also notified Plaintiff that he must file his ADA suit within ninety days of receipt. *See id.*

Plaintiff filed his ADEA and ADA claims together on November 5, 2018, eighty days after the DOJ mailed its right-to-sue notice and 232 days after the EEOC mailed its right-to-sue notice. *See* Dkt. No. 1 at 1. Defendant was served with a summons and complaint on December 3, 2018, and forwarded the complaint to its risk management servicer for insurance coverage on December 6, 2018. *See* Dkt. No. 17-3 at 1. However, Plaintiff's "claim [was never] forwarded to the insurance company through an error on [the risk management servicer's] side." *Id.* Because of this error, Defendant failed to respond to Plaintiff's complaint, and the Clerk of the Court entered

default against Defendant on May 1, 2019. *See* Dkt. No. 16. Defendant claims that it "was under the reasonable impression that its insurance carrier was handling the defense of the matter and had no notification of the entry of default by the Clerk." Dkt. No. 17-3 at 1. Upon receiving Plaintiff's motion to enter default judgment, Defendant contacted its risk management servicer, who uncovered its error, and Defendant promptly filed a motion to vacate the entry of default on May 17, 2019. *See id.*

## III. DISCUSSION

### A.      Motion to Vacate Entry of Default

Defendant has moved to vacate default pursuant to Rule 60 of the Federal Rules of Civil Procedure, which provides for relief from an order or judgment. In this case, the Clerk has entered default, but there is no default judgment. Where there has been a certificate of default, but not default judgment, the Court decides the motion to vacate the entry of default pursuant to Rule 55(c), which is more lenient than the standard to set aside a default judgment under Rule 60(b). *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981).

The court may set aside an entry of default for good cause shown. Fed. R. Civ. P. 55(c). While vacating entry of default is in the discretion of the district court, there is a "'preference for resolving disputes on the merits.'" *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). Defaults generally are disfavored and are reserved for rare occasions. *See Enron Oil Corp.*, 10 F.3d at 96. Accordingly, all doubts must be resolved in favor of the party seeking relief from the default in order to ensure that, to the extent possible, disputes are resolved on their merits. *See Powerserve Int'l, Inc.*, 239 F.3d at 514.

When determining whether there is "good cause" to vacate entry of default under Rule 55(c), a district court must consider three factors: (1) the willfulness of the default; (2) the existence of a meritorious defense to the defaulted claims; and (3) prejudice to the non-defaulting party should relief be granted. *See Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001). "[N]o single factor is dispositive." *FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12 Civ. 1674, 2013 WL 5405699, *4 (S.D.N.Y. Sept. 23, 2013); *see also Wagstaff–El v. Carlton Press Co.*, 913 F.2d 56, 57 (2d Cir. 1990) (holding that the district court did not abuse its discretion by vacating a default judgment despite a finding of willfulness, because the defaulting party had a meritorious defense and the plaintiff would not be prejudiced if the default was vacated). "When doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96. "Good cause" should be construed generously. *Id.* "While courts are entitled to enforce compliance with the time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *Meehan*, 652 F.2d at 277.

In the present matter, the Court finds that Defendant has established good cause to vacate the entry of default. Three days after Defendant was served with the summons and complaint in this matter, it forwarded those documents to Arthur Gallagher, its risk management service for insurance coverage. *See* Dkt. No. 17-1 at ¶ 4. At this point, Defendant was under the impression that its insurance carrier was handling the defense of this matter and had no notification of the entry of default. *See id.* at ¶ 5. When Defendant received Plaintiff's motion for default judgment, it immediately contacted its risk management service, who advised that the claim had not been forwarded to the insurance company through an error on the part of the risk management service.

*See id.* at ¶ 6.  Based on these representations, it is clear that Defendant did not willfully fail to respond to Plaintiff's complaint.

Moreover, as discussed in more detail below, Defendant has a meritorious defense to some, if not all of the claims asserted.  Finally, Plaintiff has not identified any prejudice he will suffer should the Court vacate the entry of default.

Based on the foregoing, the Court grants Defendant's motion to vacate the entry of default.

**B.     Timeliness**

"A disability-discrimination claimant must exhaust administrative remedies with the EEOC before filing ADA claims in district court." *Carmichael v. Morrison Mgmt. Specialists*, No. 13-CV-00692-A, 2014 WL 1270042, *2 (W.D.N.Y. Mar. 26, 2014) (citing 42 U.S.C. § 2000e-5(e),(f); *D'Lima v. Cuba Mem'l Hosp., Inc.*, 833 F. Supp. 2d 383, 388 (W.D.N.Y.2011)). "The administrative process begins when the claimant files a charge of discrimination with the EEOC." *Id.* at *2 (citing 42 U.S.C. § 2000e-5(b)).  Once the plaintiff files the charges, the EEOC begins to investigate them, but "if the charges do not have merit, the EEOC may dismiss them and give the claimant notice of a [ninety]-day deadline to sue in district court." *Id.* at *2 (citing 42 U.S.C. § 2000e-5(b), (f)).  While "42 U.S.C. § 2000e-5(f)(1) . . . requires that the [right-to-sue] notice be issued by the Attorney General in a case involving a government, government agency, or political subdivision[,] . . . 29 C.F.R. § 1601.28(d) . . . authorizes such notice by the EEOC" if the EEOC has dismissed the charge. *Parks v. Office of Temp. & Disability Assistance*, 675 F. Supp. 2d 440, 443 (S.D.N.Y. 2009).  Although "[c]ourts have disagreed whether the regulation is at odds with the statute[,]" courts in the Second Circuit have recognized the EEOC's authority to issue the right-to-sue notice in such cases. *Id*.  Furthermore, the Justice Department and the EEOC have agreed that "'[t]he Attorney General will issue [right-to-sue notices] only when the EEOC finds

probable cause, conciliation efforts fail, and the EEOC refers the case to the Justice Department, but the Attorney General decides not to pursue the action.'" *Thompson v. Conn. State Univ.*, 466 F. Supp. 2d 444, 450 (D. Conn. 2006) (quoting *Dougherty v. Barry*, 869 F.2d 605, 612 (D.C. Cir. 1989) (citations omitted)); *see also Spencer v. N.Y.C. Transit Auth.*, No. 95-CV-4779, 1999 WL 51814, *13-14 (E.D.N.Y. Jan. 14, 1999) (holding that "only when the EEOC did not dismiss the charge will 'the Attorney General . . . issue the notice of right to sue'") (quoting 29 C.F.R. § 1601.28(d)).

However, "a right to sue notice issued by the Justice Department does not revoke a prior notice issued by the EEOC, and so does not revive a private right to sue." *Dougherty*, 869 F.2d at 611. Thus, when the EEOC dismisses a discrimination claim, including an ADEA claim, "the EEOC, not the Attorney General, remains the agency whose issuance of a right to sue notice triggers the commencement of the ninety-day period in which to file a lawsuit." *Spencer*,1999 WL 51814, at *13-14; *see also Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 563 (2d Cir. 2006) (holding that "in the event that the EEOC issues a right-to-sue letter to an ADEA claimant, the claimant must file [his] federal suit within [ninety] days after receipt of the letter") (citing 29 U.S.C. § 626(e)). "The [ninety]-day period is strictly enforced and cannot be extended by even one day." *Hughes v. Elmira Coll.*, 584 F. Supp. 2d 588, 589 (W.D.N.Y. 2008).

The ninety-day period in which an EEOC claimant must file suit is presumed to begin three days after either the EEOC or DOJ issues a right-to-sue letter, as "'[n]ormally it is assumed that a mail document is received three days after its mailing,' and it is [also] 'normally presumed that a notice provided by a government agency has been mailed on the date shown on the notice.'" *Edwards v. Onondaga Cmty. Coll.*, No. 5:14-CV-1329, 2015 WL 7283187, *3 (N.D.N.Y. Nov. 16, 2015) (quoting *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525-26 (2d Cir.1996) (citation

omitted)); *see also* Fed. R. Civ. P. 6(e) ("Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, [three] days shall be added to the prescribed period").

In the present matter, on March 15, 2018, the EEOC dismissed Plaintiff's ADEA claim but "forwarded [Plaintiff's ADA claims] to the U.S. Department of Justice (DOJ) for review to determine whether the DOJ will bring suit in Federal District Court against [Defendant] regarding [Plaintiff's] ADA allegations." Dkt. No. 17-2 at 19. Thus, Plaintiff's ninety-day period for filing his ADEA claim began on March 18, 2018, when Plaintiff is assumed to have received the EEOC dismissal, and closed on June 16, 2018. *See id.* at 20. Therefore, Plaintiff's November 5, 2018, ADEA claim is untimely, and the Court grants Defendant's motion to dismiss this claim. *See* Dkt. No. 1 at 1.

In certain circumstances, the Court may equitably toll the ninety-day statute of limitations. *See Colon v. Sabic Innovative Plastics US, LLC*, No. 1:15-CV-651, 2017 WL 3503681, *4 (N.D.N.Y. Aug. 15, 2017). However, equitable tolling applies only in "rare and exceptional circumstance[s]." *Martinez v. Superintendent of E. Corr. Facility*, 806 F.3d 27, 31 (2d Cir. 2015) (quoting *Smith v. McGinnis*, 208 F.3d 13, 15 (2d Cir. 2000)). To determine whether equitable tolling is available, a court must decide whether the party attempting to invoke the doctrine "(1) has acted with reasonable diligence during the time period []he seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. Choicecare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). The party

seeking to extend the limitations period bears the burden of proving that tolling is appropriate. *See Chapman*, 288 F.3d at 512 (citing *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000)).

In the present matter, Plaintiff has not requested that the Court grant this extraordinary relief. Even if Plaintiff had requested this relief, nothing in the record supports granting such a request. Plaintiff has failed to address Defendant's claim that his ADEA claims are time-barred and has also failed to provide any explanation for his delay in filing these claims in federal court. *See* Dkt. No. 20 at 1-4. Furthermore, the record reflects no indication that Plaintiff acted with reasonable diligence to file his suit within the ninety days very clearly required by the EEOC's dismissal. *See* Dkt. No. 17-2 at 20. Thus, the Court finds that even if Plaintiff had requested this relief, both his complaint and the record as a whole fail to establish facts meeting the equitable tolling test's first prong, and equitable tolling is not available for Plaintiff's ADEA claims.

In the alternative, even if equitable tolling were available, Plaintiff's bald allegation that Defendant discriminated against Plaintiff because of his age falls short of making a plausible claim for ADEA discrimination. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010) (discussing the requirements for a *prima facie* ADEA discrimination claim). Plaintiff fails to allege any facts other than stating his age to support his allegation of age discrimination. *See* Dkt. No. 1 at 2-13. Thus, even if Plaintiff's ADEA claims were not time-barred, the Court would grant Defendant's motion to dismiss these claims.

As to the timeliness of Plaintiff's ADA claims, on August 17, 2018, the DOJ issued a letter informing Plaintiff "that conciliation on your case was unsuccessful by the EEOC. You are further notified that you have the right to institute a civil action under Title I of the [ADA.] . . . [S]uch suit must be filed in the appropriate court within [ninety] days of your receipt of this Notice." Dkt. No. 20 at 17. Thus, Plaintiff's ninety-day period for filing his ADA claims began

on August 20, 2018, when Plaintiff is assumed to have received the DOJ notice, and ended on November 18, 2018. *See* Dkt. No. 17-2 at 20; *see also* Fed. R. Civ. P. 6(e). Therefore, Plaintiff's ADA claims, filed on November 5, 2018, are timely. *See Leon-Rodriguez v. Corrections Dept. of Puerto Rico*, No. 08-cv-1584, 2010 WL 11679321, *6 (D.P.R. June 29, 2010).

Based on the foregoing, Defendant's motion to dismiss is granted as to Plaintiff's ADEA claims and denied as to Plaintiff's ADA claims.

## C.    Failure to State a Claim

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering a claim's legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). However, this presumption of truth does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the

speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.* at 570.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (citations omitted). The Second Circuit has held that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

### 1. ADA Disability Discrimination

"Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*[.]" *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)). Under the *McDonnell Douglas* framework, "the survival of a complaint under Rule 12(b)(6) scrutiny in an employment discrimination case 'does not rest on whether it contains specific facts establishing a *prima facie* case.'" *Figueroa v. RSquared NY,*

*Inc.*, 89 F. Supp. 3d 484, 489 (E.D.N.Y. 2015) (quoting *Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F. Supp. 2d 228, 236 (E.D.N.Y. 2011)).  "This is because, at the pleading stage, courts do not apply the *McDonnell Douglas* burden shifting test to analyze the evidentiary support for the discrimination claims."  *Id.* (citing *Gonzalez v. Carestream Health, Inc.*, 520 Fed. Appx. 8, 9-10 (2d Cir. 2013)).  "Instead, '[the court] consider[s] only whether the complaint includes factual allegations sufficient "to raise a right to relief above the speculative level."'"  *Laface v. E. Suffolk BOCES*, 349 F. Supp. 3d 126, 145 (E.D.N.Y. 2018) (quoting *Gonzalez*, 520 Fed. Appx. at 10 (quoting *Twombly*, 550 U.S. at 555)).  "In other words, the [c]ourt asks only whether a plaintiff has pled a *prima facie* case, not whether a plaintiff has established that case."  *Id.* at 145 (quoting *Figueroa*, 89 F. Supp. 3d at 489); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (noting that "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss"); *Dooley v. JetBlue Airways Corp.*, 636 Fed. Appx. 16, 21 (2d Cir. 2015) (applying this pleading standard to an ADA discrimination claim).  "Nevertheless, while a plaintiff need not allege specific facts establishing all the elements of a *prima facie* case under *McDonnell Douglas*, these elements can still 'provide [a helpful] outline of what is necessary to render [a plaintiff's] claims for relief plausible.'"  *Fanelli v. New York*, 51 F. Supp. 3d 219, 231 (E.D.N.Y. 2014) (quoting *Sommersett v. City of New York*, No. 09-CV-5916, 2011 WL 2565301, *5 (S.D.N.Y. June 28, 2011) (alterations in original)).

A *prima facie* case of discrimination under the ADA requires that the plaintiff demonstrate that "(1) [his] employer is subject to the ADA; (2) [he] is disabled within the meaning of the ADA; (3) [he] is otherwise qualified to perform the essential functions of [his] job with or without accommodation; and (4) [he] suffered an adverse employment action because of [his] disability."

*Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 Fed. Appx. 123, 127 (2d Cir. 2019) (citing *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004)).

In the present matter, the Court finds that Plaintiff has, albeit barely, alleged a plausible claim of disability discrimination. As to the first element, it is undisputed that Defendant is subject to the ADA. As to the second element, the ADA's definition of "disability" includes "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual[.]" 42 U.S.C. § 12102(1). "Major life activities" include, *inter alia*, "performing manual tasks, . . . lifting, bending, . . . and working." 42 U.S.C. § 12102(2)(A). However, "[t]he mere presence of a medical condition does not establish that a plaintiff is disabled." *O'Donnell v. King B 100, LLC*, No. 14-CV-1345, 2016 WL 7742779, *9 (N.D.N.Y. May 3, 2016) (citations omitted). "In addition, it is well settled that temporary impairments with little or no long-term permanent impact are not disabilities under the ADA." *Id.* (citations omitted). "Such temporary or 'transitory' impairments are defined 'as lasting six months or less.'" *Crosby v. McDonald's of Guilderland, LLC*, No. 1:17-CV-1160, 2018 WL 2077884, *3 (N.D.N.Y. May 2, 2018) (quoting 42 U.S.C. § 12102(3)(B)).

Here, Plaintiff alleges that he suffered from herniated disks in his neck that caused him to spend nine months on workers' compensation. *See* Dkt. No. 1 at 11. Plaintiff's complaint also suggests that this neck injury continued to impair his ability to work after he returned from medical leave, as Plaintiff's doctor "tried to return [Plaintiff] back to [his] job on light duty." *Id.* at 5. Plaintiff's period of impairment thus well exceeded six months and surpassed the period of "transitory" impairments under the ADA. *See Crosby*, 2018 WL 2077884, at *3. Therefore, Plaintiff's complaint plausibly alleges specific factual averments as to both his injury's effect and duration to establish a disability under the ADA.

As to the third element of an ADA discrimination claim, "the determination of whether a person is 'qualified' [to perform the essential functions of his job] should be made at the time of the discriminatory employment action." *Smith v. Town of Ramapo*, 745 Fed. Appx. 424, 426 (2d Cir. 2018). To determine a particular job's "essential functions," "[c]ourts must conduct 'a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice.'" *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 229 (2d Cir. 2017) (quoting *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013)). Factors to consider include, *inter alia*, "'the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, . . . and the work experience of current employees in similar positions." *Id.* (quoting *McMillan*, 711 F.3d at 126) (citations omitted).

Liberally construed, Plaintiff has alleged sufficient facts to satisfy this element. In support of their motion, Defendant submitted an affidavit from Timothy McIntyre, who is the Superintendent of the Water and Wastewater Department. *See* Dkt. No. 17-4. In his affidavit, Mr. McIntyre discusses the job description of a laborer and how that position is performed in practice. Specifically, Mr. McIntyre indicates that "'light duty' is not offered to Laborer's for the Town given the nature of the work," which consists of mainly manual activities that involve lifting. *See id.* at ¶¶ 5-6. While this may be accurate, this information is not properly considered on a motion to dismiss, since it is outside the pleadings and not information that the Court can take judicial notice of. Thus, making all reasonable inferences in Plaintiff's favor, as it must, the Court concludes that Plaintiff plausibly alleges that he was qualified for his job with or without reasonable accommodation at the time of his termination. *See ATSI Commc'ns, Inc.*, 493 F.3d at 98 (citation omitted).

As to the fourth element of an ADA discrimination claim, "[a]n adverse employment action includes any 'materially adverse change in the terms and conditions of employment.'" *Dotson v. City of Syracuse*, No. 5:18-CV-750, 2019 WL 2009076, *3 (N.D.N.Y. May 7, 2019) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). "Examples of materially adverse changes include termination of employment[.]" *Vega*, 801 F.3d at 85 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.2003)). "[A]t the pleadings stage, . . . a plaintiff must allege that the employer took adverse action against [him] at least in part for a discriminatory reason." *Id.* at 87. A plaintiff may meet this standard "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* (citing *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015)). "A plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of similarly situated employees but 'must show [he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare [him]self.'" *Novick v. Vill. of Wappingers Falls, New York*, 376 F. Supp. 3d 318, 342 (S.D.N.Y. 2019) (quoting *Kosack v. Entergy Enters., Inc.*, No. 14-CV-9605, 2019 WL 330870, *6-7 (S.D.N.Y. Jan. 25, 2019) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003))). "[T]o satisfy [the] 'all material respects' standard for being similarly situated, a plaintiff must show that . . . similarly situated employees who went undisciplined engaged in comparable conduct." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (citation omitted).

Again, Plaintiff has plausibly alleged, given the special solicitude shown to *pro se* litigants, that he was terminated because of his disability. Again, Defendant relies on the affidavit of Timothy McIntyre to argue that Plaintiff was in fact terminated because of a number of disciplinary and job performance issues. *See* Dkt. No. 17-4 at ¶¶ 8-17. Most recently, Defendant

contends that, on February 13, 2018, the Town brought a disciplinary action against Plaintiff, which ultimately led to his termination on February 22, 2018. *See id.* While Defendant may ultimately establish that Plaintiff was terminated for reasons other than those alleged in the complaint, reliance on such evidence at this stage is impermissible.

Based on the foregoing, the Court denies Defendant's motion to dismiss as to Plaintiff's disability discrimination claim.

### 2. ADA Failure to Accommodate Claim

"An employer may . . . [also] violate the ADA by failing to provide a reasonable accommodation" for an employee's disability. *Dominelli v. N. Country Acad.*, No. 1:16-CV-203, 2016 WL 6833992, *2 (N.D.N.Y. Nov. 18, 2016) (quoting *McMillan*, 711 F.3d at 125). To state a claim under the failure to accommodate framework, a plaintiff must show that "(1) [p]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [his] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Harvin v. Manhattan and Bronx Surface Transit Operating Auth.*, 767 Fed. Appx. 123, 126 (2d Cir. 2019) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96-97 (2d Cir. 2009)).

In addition to an employer's obligation to provide reasonable accommodation for "disabilities for which accommodation has been requested[,]" employers also have "a duty reasonably to accommodate an employee's disability if the disability is obvious—which is to say, if the employer knew or reasonably should have known that the employee was disabled." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008). Thus, even when an employee fails to request specific accommodation for his disability, "the ADA contemplates that employers will

engage in 'an "interactive process" [with their employees and in that way] work together to assess whether an employee's disability can be reasonably accommodated.'" *Id.* (quoting *Jackan v. N.Y.S. Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000)). "'Reasonable accommodations' may include adjustments to work schedules or other job restructuring." *McMillan*, 711 F.3d at 127 (citing 45 C.F.R. § 84.12(b) (2005)). However, "an accommodation is reasonable only if its costs are not clearly disproportionate to the benefits that it will produce." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995) (citing *Vande Zande v. Wis. Dep't of Admin.*, 44 F.3d 538, 542 (7th Cir.1995)). Furthermore, "[t]he accommodation must allow the employee to perform the essential functions of [his] job at the same level as the rest of the workforce." *Fowler v. Kohl's Dep't Stores, Inc.*, No. 1:07-CV-1197, 2009 WL 2155481, *5 (N.D.N.Y. July 16, 2009) (citing *Borkowski*, 63 F.3d at 138 n.3).

In the present matter, Plaintiff has plausibly alleged a *prima facie* failure to accommodate claim under the ADA. As discussed in the discriminatory discharge analysis directly above, the Court has already found that Plaintiff plausibly alleged elements one and three of a failure to accommodate claim. Plaintiff has also plausibly alleged facts supporting the second element of this claim: that Defendant had notice of Plaintiff's disability. *See McBride*, 583 F.3d at 96-97. Plaintiff alleges that he requested light duty when he tried to return to work after injuring his neck, but that Defendant "refuse[d] [Plaintiff] light duty while other employees where [sic] granted light duty." Dkt. No. 1 at 5. Additionally, even if Plaintiff had not put Defendant on notice by requesting accommodation for his injury, Defendant "knew or reasonably should have known that [Plaintiff] was disabled," *Brady*, 531 F.3d at 135, as Plaintiff had been on workers' compensation for nine months after injuring his neck, *see* Dkt. No. 1 at 11. Furthermore, Defendant does not contend that it had no notice of Plaintiff's disability but contends only that light duty is not

available to any of Defendant's employees in Plaintiff's department. *See* Dkt. No. 17-3 at 6. While it may ultimately be determined that light duty would have been an unreasonable accommodation, Plaintiff's complaint plausibly alleges that Defendant granted this accommodation to others in the past and that he could perform the essential functions of his job with such an accommodation. *See Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018) (holding that failure to accommodate amounts to an adverse employment action in "scenarios where the failure to accommodate resulted in an adverse employment action").

Based on the foregoing, the Court denies Defendant's motion to dismiss as to Plaintiff's failure to accommodate cause of action.

### 3. ADA Retaliation

The ADA makes it unlawful for an employer to retaliate against an employee by "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). ADA retaliation claims are also analyzed under "the same *McDonnell-Douglas* burden-shifting framework discussed earlier." *Wagner v. Cty. of Nassau*, No. 11-CV-1613, 2014 WL 3489747, *8 (E.D.N.Y. July 11, 2014). Accordingly, once more "the [c]ourt asks only whether a plaintiff has pled a *prima facie* case, not whether a plaintiff has established that case." *Laface*, 349 F. Supp. 3d at 145 (quoting *Figueroa*, 89 F. Supp. 3d at 489).

A *prima facie* case for retaliation under the ADA requires that a plaintiff show that "'(1) [he] engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse [employment] action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting*

18

*Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)).

"The ADA is not, however, a catchall statute creating a cause of action for any workplace retaliation, but protects individuals only from retaliation for engaging in, or aiding another who engages in, activity covered by the ADA." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing 42 U.S.C. § 12203(a)). "The ADA's retaliation provision only prohibits retaliation against a person because the person 'opposed any act or practice made unlawful *by this chapter*' or 'made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing *under this chapter*.'" *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (holding that "a workers' compensation claim is not something that is covered by the ADA") (emphases in original); *see also Skinner v. City of Amsterdam*, 824 F. Supp. 2d 317, 332 (N.D.N.Y. 2010) (holding that "filing a complaint with the DOT is not protected participation under the ADA").

In the present matter, Plaintiff's complaint fails to make a facially plausible claim for retaliation under the ADA. In his complaint, Plaintiff alleges that he was terminated from his job "for cooperating with the EEOC & PESH" investigations.[1] *See* Dkt. No. 1 at 4. He provides no additional facts in support of this claim. Although temporal proximity between a filing a claim with the EEOC and an adverse employment action can often support an inference of retaliation, no such inference can be drawn from the complaint in the present matter. Plaintiff alleges that he filed his claim with the EEOC on February 28, 2017 and that he was terminated almost a year later on February 23, 2018. Courts have generally found that, when relying on temporal

---

[1] The Court notes that "PESH" is the acronym commonly used for the New York State Department of Labor Public Employee Safety and Health Bureau.

proximity, the protected activity must be "'very close'" to the adverse employment action, "which ordinarily means close in time than a few months." *Cortez v. Connecticut, Dep't of Transp.*, 606 F. Supp. 2d 246, 251 (D. Conn. 2009) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)); *see also Chamberlin v. Principi*, 247 Fed. Appx. 251, 254 (2d Cir. 2007) (holding that temporal proximity was insufficient to support the plaintiff's retaliation claim where there was a five-month interval between the plaintiff's complaint with the EEOC and the alleged adverse employment action).

In his response to Defendant's motion to dismiss, Plaintiff provides a few more details regarding the alleged retaliation. Dkt. No. 20 at 1-2. Specifically, Plaintiff alleges that he "spoke with both EEOC and PESH reprentatives [sic] regarding safety issues within the department. The next time I cooperated with a PESH representative, I was terminated 5 days later." *Id.* While Plaintiff's cooperation with the EEOC is a protected activity under the ADA, *see* 42 U.S.C. § 12203(a), Plaintiff's bare allegation that he "was also[] terminated for cooperating with the EEOC" would still be insufficient to support this claim.

Moreover, the response makes clear that Plaintiff's retaliation claim centers almost exclusively on his cooperation with the PESH investigation. *See* Dkt. No. 20 at 2. Plaintiff claims that he was terminated in retaliation for reporting Defendant's failure to supply Plaintiff with a two-way radio while Plaintiff was acting as a flagperson on a busy road. *See id.* However, Plaintiff's cooperation with PESH regarding this alleged violation of PESH safety rules is utterly unrelated to Plaintiff's disability and is therefore not a protected activity under the ADA. *See* 42 U.S.C. § 12203(a); *see also Gorbea v. Verizon New York, Inc.*, No. 11-CV-3758, 2014 WL 917198, *11 (E.D.N.Y. Mar. 10, 2014) (holding that, to be protected activity, a complaint, whether formal or informal, about working conditions must be related to one's disability).

Having failed to plausibly allege a causal connection between any protected activity and the adverse employment action, the Court grants Plaintiff's motion to dismiss as to Plaintiff's ADA retaliation claim.

**D.     Leave to Amend**

Based on the allegations presented, the Court is doubtful that Plaintiff will be able to assert a plausible claim of retaliation under the ADA.  However, a district court should generally "not dismiss a *pro se* complaint without granting the plaintiff leave to amend." *Tylicki v. Schwartz*, 401 Fed. Appx. 603, 604 (2d Cir. 2010) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).  Thus, in light of the special latitude afforded to *pro se* litigants, the Court will provide Plaintiff with an opportunity to amend his complaint as to his ADA retaliation claim.  If Plaintiff files an amended complaint, it must be a wholly-integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.

Since the claims under the ADEA are untimely, any amendment as to those claims would be futile.  As such, those claims are dismissed with prejudice.

### IV. CONCLUSION

For the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion to vacate entry of default is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion to dismiss is **GRANTED in part and DENIED in part**;[2] and the Court further

---

[2] As a result of this Memorandum-Decision and Order, the only remaining claims are disability discrimination and failure to accommodate under the ADA.

21

**ORDERS** that Plaintiff's motion for default judgment is **DENIED as moot**; and the Court further

**ORDERS** that Plaintiff may file an amended complaint within thirty (30) days of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Defendant shall filed its answer to Plaintiff's complaint within ten (10) days of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 19, 2019
      Albany, New York

Mae A. D'Agostino
U.S. District Judge